## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**SHARONE E. BERRY,**

      **Plaintiff,**

**vs.**                          **Case No. 1:17cv151-MW/CAS**

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security,**

      **Defendant.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

      This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for Supplemental Security Income (SSI) filed pursuant to Title XVI of the Act and an application for a period of disability and Disability Income Benefits (DIB) filed pursuant to Title II of the Social Security Act.  After consideration of the entire record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On August 9 and 13, 2013, Plaintiff, Sharone E. Berry, filed applications for DIB and SSI, respectively, alleging disability beginning June 29, 2013, based on neuropathy in her right leg and left hand; arthritis in the legs and back; degenerative disc disease; depression, fractured ankle; high blood pressure; and chronic sinusitis. Tr. 29, 107, 117, 246-56, 277, 282, 287.[1]  Plaintiff last met the insured status requirements for DIB on June 30, 2016.  Tr. 29.

Plaintiff's applications were denied initially on October 28, 2013, and upon reconsideration on January 14, 2014.  Tr. 29, 24-46, 127-30, 153-56. On February 21, 2014, Plaintiff requested a hearing.  Tr. 29, 180-81.  On March 22, 2016, ALJ Robert Droker conducted a video hearing from Jacksonville, Florida, and Plaintiff appeared in Gainesville, Florida.[2]  Tr. 22, 47-87.  Plaintiff was represented by N. Albert Bacharach, Jr., an attorney, but Pamela C. Dunmore, an attorney and appointed co-representative from the same firm, appeared at the hearing.  Tr. 29, 47, 49, 177-79, 212.

---

[1]  Citations to the transcript/administrative record, ECF No. 10, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.  Plaintiff had filed prior applications for DIB and SSI on August 25, 2011, which were denied by written decision of an Administrative Law Judge (ALJ) on June 28, 2013.  Tr. 91-101; *see* Tr. 278.

[2]  "Upon the advice of counsel, the claimant amended her alleged onset date to July 8, 2013."  Tr. 29.

Plaintiff testified during the hearing.  Tr. 29, 56-76.  Paul R. Dolan, M.A.,

CRC, an impartial vocational expert, testified during the hearing.  Tr. 29,

78-86, 332-33 (Resume).  During the hearing, Exhibits B1A through B13A,

B1B through B21B, B1D through B11D, B1E through B16E, and B1F

through B6F were received into evidence.  Tr. 55, 42-46; *see* ECF No. 10-

1.

On April 14, 2016, the ALJ issued a decision and denied Plaintiff's

applications for benefits concluding that Plaintiff was not disabled from July

8, 2013, to the date of the decision.  Tr. 29-41.

On June 1, 2016, Plaintiff requested review of the ALJ's decision,

Tr. 15-17, and provided the Appeals Council with medical records (eight

pages) dated April 18, 2016, from UF Health Shands Hospital (Shands).

Tr. 18-25.  The record also contains an April 12, 2016, letter from Shands

stating: "Sharone Elaine Berry has been using a cane to ambulate.  Per

patient report this has improved ambulation and reduced falls."  Tr. 6, 336

(Exhibit B17E).  On April 14, 2017, the Appeals Council noted that it had

considered the April 12th letter and the April 18th records and denied

Plaintiff's request for review, making the ALJ's decision the final decision of

the Commissioner.  Tr. 1-7; *see* 20 C.F.R. § 404.981.  As part of its

decision, the Appeals Council stated, in part:

We considered the *borderline age situation* in this case and we found that the factors in the record did not support application of the higher age category.

We also looked at medical records from UF Health, dated April 18, 2016 (8 pages).  The Administrative Law Judge decided your case through April 14, 2016.  This new information is about a later time. Therefore, does not affect the decision about whether you were disabled beginning on or before April 14, 2016.

If you want us to consider whether you were disabled after April 14, 2016, you need to apply again.  The new information you submitted is available in your electronic file for you to use in your new claim. . . . .

Tr. 2 (emphasis added).[3]  The ALJ did not mention consideration of "the

borderline age situation," Tr. 29-41, although he was aware of Plaintiff's

age of 54 at the time of the hearing, Tr. 56-80.

On June 13, 2017, Plaintiff, by counsel, filed a Complaint with this

Court seeking review of the ALJ's decision.  ECF No. 1.  The parties filed

memoranda of law, ECF Nos. 16 and 17, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings:

1. "The claimant meets the insured status requirements of the Social Security Act through June 30, 2016."  Tr. 31.

2. "The claimant has not engaged in substantial gainful activity since July 8, 2013, the amended alleged onset date."  *Id.*

---

[3]  Plaintiff represents that she was awarded SSI benefits soon after the Appeals Council denied her claim in this matter.  ECF No. 16 at 18.

3. "The claimant has the following severe impairments: osteoarthritis of the right ankle and first MTP joint; degenerative disc disease with lumbar radiculopathy; obesity; affective disorder; and peripheral neuropathy." *Id.* The ALJ also noted that Plaintiff "has sought treatment for and/or been diagnosed with hypertension, gastroesophageal reflux disease (GERD), and history of substance use disorder (in full remission); however, the evidence does not show that these impairments have imposed vocationally restrictive limitations for a period of 12 continuous months. . . . Nevertheless, the undersigned has considered the combined impact of both the severe and non-severe impairments in formulating the residual functional capacity [RFC] below." Tr. 32.

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 32. The ALJ considered the effects of Plaintiff's "obesity when assessing the claimant under the listings and other steps of the sequential evaluation process, including the assessment of her [RFC]." *Id.* The ALJ also considered the severity of Plaintiff's depression and determined that it did not meet or medically equal the criteria of Listing 12.04. Nevertheless, the ALJ considered the "paragraph B" criteria and determined that Plaintiff had *mild* limitation in activities of daily living and social functioning; *mild to moderate* limitation in maintaining concentration, persistence, or pace; and had *no* episodes of decompensation of extended duration. Tr. 32-33.

5. "[T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she needs to be afforded the opportunity to alternate between sitting and standing at her option; she needs to avoid ladders or unprotected heights; she needs to avoid the operation of heavy moving machinery; she needs simple tasks with low stress and no production line; she is limited to occasional bending, kneeling and stooping; she needs to avoid crouching, squatting and crawling; she needs to avoid the push and pull of arm controls; she needs to avoid the operation of foot controls; she needs to avoid extreme cold; and she needs to be allowed to use a mono-cane for ambulation." Tr. 34; *see infra* at n.4.

6. The claimant is unable to perform any past relevant work." Tr. 39. The ALJ noted the vocational expert testified that Plaintiff's past relevant work is classified in the Dictionary of Occupational Titles (DOT) as fast food worker, light exertion; cleaner/hospital, medium exertion; and cleaner/commercial, heavy exertion (but performed at a lighter exertion). Each of these jobs are unskilled with an SVP of 2. *Id.*; *see infra* at n.4.

7. The claimant was 51 years old, which is defined as an individual closely approaching advanced age (age 50 to 54), on the alleged disability onset date. Tr. 39; *see* 20 C.F.R. § 404.1563(d). A person of advanced age is age 55 or older. 20 C.F.R. § 404.1563(e). Plaintiff was approximately 54 ½ years old as of the date of the ALJ's decision. Tr. 56. ECF No. 16 at 17. The ALJ did not mention consideration of "the borderline age situation," although he was aware of Plaintiff's age of 54 at the time of the hearing, Tr. 56-80. Tr. 29-41. The Appeals Council considered this issue. Tr. 2; *see supra* at 4.

8. "The claimant has a high school education (with special education classes) and is able to communicate in English." Tr. 39. "Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled." *Id.*

9. "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 39. As noted above, at 51 years old as of the alleged disability onset date, the ALJ considered Plaintiff to be an individual closely approaching advanced age. Having determined that Plaintiff had the RFC to perform a full range of light work, the Medical-Vocational Rules (the Grids) would direct a finding of "not disabled" pursuant to Rules 202.10 and 202.13. Tr. 40; *see* 20 C.F.R. pt.404, subpt. P, app.2, table no.1, §§ 202.10 and 202.13. The ALJ determined, however, Plaintiff's ability to perform all or substantially all the requirements of this level of work has been impeded by additional limitations. Tr. 40. As a result, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with the Plaintiff's age, education, work

experience and RFC.  *Id.*  The vocational expert testified that such an individual could perform several representative occupations such as ticket seller, ticket taker, and house sitter, all light exertion, unskilled, with an SVP of 2.  *Id.*; *see* Tr. 80-86.[4]  Plaintiff argues herein that at best, Plaintiff has the RFC to perform sedentary work, and, given Plaintiff's age, Plaintiff should have been considered disabled pursuant to Rule.  ECF No. 16 at 17.  Plaintiff also argues the Appeals Council should have remanded this matter for payment of benefits, pursuant to Rule 202.04 because, as of October 22, 2016, Plaintiff turned 55 and was a person of advanced age and a decision of disabled is provided under this Rule.  *Id.* at 18.  During the hearing, Plaintiff's counsel argued the ALJ should consider Rule 201.14 (limited to sedentary work), which would indicate the decision should be Plaintiff is disabled.  Tr. 66.

10. "The claimant has not been under a disability, as defined in the Social Security Act, from July 8, 2013, through the date of the date of [the ALJ's] decision."  Tr. 40.

---

[4]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  A Specific Vocational Preparation (SVP) of 1 means "short demonstration only."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month."  *Id.*  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of 1 and 2.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).  In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).  "Heavy work involves lifting no more than 100 pounds of time with frequent lifting or carrying of objects weighing up to 50 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(d).

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[5]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2)

---

[5]  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" <u>Bloodsworth</u>, 703 F.2d at 1240 (citations omitted).  A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. §§ 404.1505(a), 404.1509 (duration requirement).[6]

Both the "impairment" and the "inability" must be expected to last not less than 12 months.  <u>Barnhart v. Walton</u>, 535 U.S. 212 (2002).  In addition, an individual is entitled to DIB if she is under a disability prior to the

---

[6]  The relevant DIB and SSI regulations are virtually identical.  As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise.  The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, e.g., 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

expiration of her insured status.  *See* 42 U.S.C. § 423(a)(1)(A); Moore v.

Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845

F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health &

Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R.

§ 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[7]

---

[7] An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  Although an ALJ considers medical source opinions, the responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 4041546(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."); *see also* Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor").  The Court will apply the SSR in effect when the ALJ rendered her decision.  *See generally* Bagliere v. Colvin, No. 1**:**16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g). An ALJ may make this determination either by applying the grids or by obtaining the testimony of a vocational expert.  Phillips, 357 F.3d at 1239-40; *see* 20 C.F.R. pt. 404, subpt. p, app. 2.  If the Commissioner carries

---

(M.D. N.C. Feb. 23, 2017).

this burden, the claimant must prove that he or she cannot perform the

work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007,

1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and

consequently, is responsible for producing evidence in support of his claim.

See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.

## IV.  Legal Analysis

**Substantial evidence supports the ALJ's evaluation of Plaintiff's report of pain, the medical evidence, Plaintiff's RFC, and determination that she can perform representative jobs in the national economy.**

A.

Plaintiff argues the Appeals Council should have remanded this

matter for payment of benefits, pursuant to Rule 202.04 of the Medical-

Vocational Guidelines (the Grids), "as of October 22, 2016, Plaintiff's 55th

birthday."[8]  ECF No. 16 at 18.

---

[8]  Plaintiff states that on the first day of the month following the Appeals Council denial of her claim in this case, Plaintiff "was awarded SSI benefits based on a new May 2016 application alleging the same impairments as this appeal.  This leads in turn to the supposition that the decision denying Plaintiff Berry benefits was arbitrary and capricious."  ECF No. 16 at 18.  Plaintiff provides no legal authority for the latter proposition nor does she discuss relevant case law pertaining to whether benefits should be considered and awarded to persons in a "borderline" age situation.  Id.; see generally Bowman v. Colvin, No. 1:15cv8-MP/CAS, 2015 U.S. Dist. LEXIS 138176 (N.D. Fla. Aug. 20, 2015), adopted, 2015 U.S. Dist. LEXIS 138175 (N.D. Fla. Oct. 8, 2015).  As noted by the Commissioner, "[a]s the Eleventh Circuit has held, a subsequent favorable decision is immaterial to the denial of a prior application.  See

The regulations divide claimants into several age categories: "younger person" (under age 50); "person closely approaching advanced age" (age 50 to 54); and "person of advanced age" (age 55 or older).  20 C.F.R. § 404.1563(c)-(e).  The classification of a person's age can be important because, in general, the higher the age category, the more lenient the standard for proving a disability.  For example, the Medical-Vocational Guidelines consider "advanced age."

> However, for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled.

20 C.F.R. pt. 404, subpt. p, app. 2, table no. 2, § 202.00(c).  In other words, the Commissioner should "consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work" even if the claimant would otherwise have the RFC to perform that work.  20 C.F.R. § 404.1563(e).

Plaintiff was 51 years old as of the date of her amended alleged disability, July 8, 2013.  Tr. 29, 39-40.  Plaintiff's age should be considered

---

Hunter v. Soc. Sec. Admin., Comm'r, 808 F.3d 818, 822 (11th Cir. 2015)."  ECF No. 17 at 12 n.2.

as of the date of the ALJ's decision, *see* Tr. 40, which makes her 54 years old and just shy of six months from her 55th birthday.  There are many cases discussing what is or is not a "borderline age situation."  *See generally* Pettway v. Astrue, No. CA 10-127-C, 2010 U.S. Dist. LEXIS 101693, at *11-13 (S.D. Ala. Sept. 27, 2010) (canvassing cases from across the nation which address when an age should be considered borderline).  In Bowman, the Court

> agree[d] with the Magistrate Judge and our sister courts in the Middle District of Florida that the ALJ is required (1) to provide claimant an opportunity to be heard on this borderline situation issue, (2) to make an individualized determination of the age factor, and (3) to expressly articulate his or her consideration of the claimant borderline situation.

2015 U.S. Dist. LEXIS 138175, at *4 (citations omitted).  In Bowman, the Court agreed it was unable to determine from the record whether the ALJ considered the borderline situation, implicitly or otherwise, and, without this explanation, could not conclude that the ALJ's decision is supported by substantial evidence.  The case was remanded under sentence four of 42 U.S.C. § 405(g).  *Id.* at *5.[9]

---

[9]  In Bowman, there was no evidence that the ALJ *or* the Appeals Council considered whether the claimant's age presented a "borderline age situation."  *See* 2015 U.S. Dist. LEXIS 138176, at *11; *see also* ECF No. 10-2 at 1-7 (Appeals Council decision) and ECF No. 10-2 at 18-32 (ALJ's decision) in Bowman.  In Bowman, the claimant was one month shy of 55 years old as of the ALJ's decision.  2015 U.S. Dist. LEXIS 138176, at *39.

Here, the ALJ stated that Plaintiff was *51* years old, which is defined as an individual closely approaching advanced age (age 50 to 54), on the alleged disability onset date.  Tr. 39; *see* 20 C.F.R. § 404.1563(d).  A person of advanced age is age 55 or older.  20 C.F.R. § 404.1563(e).  Plaintiff was approximately 54 ½ years old as of the date of the ALJ's decision, Tr. 56.  ECF No. 16 at 17.

Like the situation in <u>Bowman</u>, the ALJ did not mention consideration of "the borderline age situation," although he was aware of Plaintiff's age of 54 at the time of the hearing, Tr. 56-80.[10]  Tr. 29-41.  But, unlike the situation in <u>Bowman</u>, the Appeals Council considered this issue stating: "We considered the borderline age situation in this case, and we found that the factors in the record do not support application of the higher age category."  Tr. 2; *see supra* at 4.

The Court in <u>Pettway</u> discussed several scenarios resolved by the courts.  The Court distinguished the facts presented from other cases and stated:

> Here, by contrast, the Appeals Council provided this Court "some record of their thought process regarding the requirements of

---

[10]  Plaintiff's counsel asked the ALJ to consider Rule 201.14, pertaining to an RFC limited to sedentary work.  Counsel stated that Plaintiff "is closely approaching advanced age."  Tr. 66.  Counsel did not argue Plaintiff was nearing "advanced age" and disabled under the applicable rules, *see, e.g.,* Rule 202.04 pertaining to a person with an RFC limited to light work, the argument Plaintiff now advances.  ECF No. 16 at 17-18.

§ 404.1563(b)." *Bowie*, 539 F.3d at 403 (Moore, J., dissenting) (citing *Daniels* with approval); *see also Russell*, 20 F. Supp. 2d at 1135-36 ("when a borderline situation is presented a factual determination must be made as to the appropriate age category . . . [and that] the ALJ's failure to explain his choice of age category in a borderline situation . . . impedes judicial review"); *Pickard*, 224 F. Supp. 2d at 1169 (adopting *Daniels* and recommending that the case be remanded because "[t]he ALJ's failure to address the borderline issue and to explain his choice of age category . . . impede this court's ability to review his application of § 404.1563(a)"). As stated previously, the Appeals Council recognized that a borderline age situation existed, "considered the overall impact of all factors in the case," and then found "no additional vocational adversities that would have warranted using the next higher age category" (R. 8.)--**as opposed to finding that claimant failed to meet his burden to show vocational adversities justifying the use of the higher age category**. *See Bowie*, 539 F.3d at 401 (Court of Appeals affirming Magistrate Judge's explanation that "there [was] simply no evidence in the record that Bowie suffered from any 'additional vocational adversities' that might justify placing her in the higher age category").

2010 U.S. Dist. LEXIS 101693, at *18-19 (bold in original). Here, like

Pettway, but without an extended discussion, the Appeals Council stated

that it "considered the borderline age situation in this case, and we found

that the factors in the record do not support application of the higher age

category." Tr. 2. Thus, unlike Bowman where neither the ALJ nor the

Appeals Council considered the borderline age situation, the Appeals

Council did so here.

In addition, the ALJ advised the vocational expert of Plaintiff's age

("54-years old," Tr. 80) along with other factors when posing a hypothetical

question. Tr. 80; *see* Tr. 81 ("Let's go down to entry level, assume the

claimant has *no skills or semi-skills at all*, that she's the age I previously

described, has the work experience and the education previously

stated. . . .") (emphasis added).  The ALJ did not mention Plaintiff's

borderline age situation or transferability of skills per se in the hypothetical

question, although he mentioned that she had no skills and ultimately

determined that "[t]ransferability of job skills is not an issue in this case

because the claimant's past relevant work is unskilled."  Tr. 39.  *See*

*generally* McShane v. Comm'r of Soc. Sec., No. 8:15-cv-677-T-JSS, 2016

U.S. Dist. LEXIS 27855, at *16-18 (M.D. Fla. Mar. 4, 2016).

　　　The ALJ determined that Plaintiff did not have the RFC to perform the

full range of light work due to additional limitations, and, therefore, the ALJ

properly used the Grids only as a framework for the decision and

considered the testimony of a vocational expert to determine there was

other representative work that Plaintiff could perform given her age,

experience, and RFC.  Tr. 40.

　　　In the Eleventh Circuit, a claimant can rebut an ALJ's age findings of

fact by proffering substantial credible evidence that his or her ability to

adapt to other work is less than the level established by the Grids for

persons of the claimant's age.  Reeves v. Heckler, 734 F.2d 519 (11th Cir.

1984).  As discussed below, Plaintiff does not persuasively prove that her

ability to adapt was less than that of persons of her age category, and,
therefore, she has not shown that the ALJ's finding was erroneous.
Reeves, 734 F.2d at 525.

Moreover, the question of whether the claimant should have been
treated as a person of advanced age or closely approaching advanced age
is not dispositive where the ALJ does not rely exclusively on the Grids and
substantial evidence supports the ALJ's determination that the claimant
was not disabled.  Miller v. Comm'r of Soc. Sec. Admin., 241 F. App'x 631,
636 (11th Cir. 2007) (unpublished) (issue whether ALJ erred in treating 54-
year-old as "person of advanced age" or "closely approaching advanced
age" under Grids was "essentially theoretical" because ALJ did not rely
exclusively on Grids in making disability determination and utilized
testimony of VE).  Here, the ALJ utilized the testimony of the vocational
expert, based on a hypothetical that assumed a person of Plaintiff's age,
education, experience, and RFC, in finding that Plaintiff was not disabled.
No error has been shown.

B.

Plaintiff argues that the ALJ erred when he determined that Plaintiff
had the RFC to perform light work with additional postural and mental

limitations and makes several arguments.[11]  ECF No. 16 at 17-25.  To this

end, Plaintiff alleges the ALJ's RFC assessment was inconsistent with

evidence that she has an IQ of 71, attended special education classes

throughout school, and has a history of legal, social, and drug problems.

ECF No. 16 at 18.

At step 3 of the sequential evaluation process, the ALJ considered

whether Plaintiff's depression met or medically equaled the criteria of

Listing 12.04.  Tr. 32.  The ALJ considered the "paragraph B" criteria and

determined that Plaintiff had *mild* limitation in activities of daily living and

social functioning, *mild to moderate* limitation in her ability to maintain

concentration, persistence, or pace, and *no* evidence that Plaintiff has

experienced episodes of decompensation of extended duration.  Tr. 32-33.

The ALJ also considered the "paragraph C" criteria of Listing 12.04 and

determined "that there is no medically documented history of a chronic

affective disorder of at least two years' duration that has caused more than

a minimal limitation of ability to do basic work activities."

---

[11]  Plaintiff initially alleges she should have been found disabled under Rule 201.12.  ECF No. 16 at 17.  Rule 201.12 applies to individuals with the RFC to perform no greater than sedentary work.  *See* 20 C.F.R. pt. 404, subpt. P, app.2, table no.1, § 201.12.  As noted herein, substantial evidence supports the ALJ's determination that Plaintiff retained the ability to perform a reduced range of light work.  As a result, Rule 201.12 was inapplicable to Plaintiff.

Tr. 33-34.  Nevertheless, the ALJ noted that the limitations identified in the

"paragraph B" criteria are not an RFC assessment.  Tr. 34.

As part of the RFC assessment, the ALJ considered the evaluation

performed by consultative psychologist Diana M. Benton, Psy.D., on

October 16, 2013.  Tr. 35.

> On October 16, 2013, the claimant underwent a consultative
> psychological examination performed by Diana Benton, PsyD, in
> connection with this claim.  The claimant endorsed depression, a
> remote history of cocaine abuse, and a history of special education
> classes.  On mental status examination, she had some trouble with
> calculations and one of the concentration tasks, but the findings were
> otherwise fairly unremarkable.  Dr. Benton diagnosed major
> depressive disorder and cocaine dependence in full remission, as
> well as possible borderline intellectual functioning (this was a "rule
> out" diagnosis and, as such, is not included as a medically
> determinable impairment for purposes of this decision).  She
> opined that, "[r]egarding [the claimant's] ability to perform various
> work related mental activities, she appears to have adequate
> capacity in the areas of understanding and memory, concentration,
> persistence, social interaction and adaptation to perform work for
> which she is suited" (Exhibit B3F) [Tr. 417-21].[12]

Tr. 35, 39, 420.  Dr. Benton also stated that Plaintiff "may benefit from

mental health counseling" and that she "would be able to manage her

funds, should benefits be awarded."  Tr. 420.  No error has been shown.

*See* Comm'r., Soc. Sec. Admin., 593 F. App'x 911, 915 (11th Cir. 2014)

---

[12]  Plaintiff noted that it was Dr. Benton's "opinion that [Plaintiff] would be able to
perform unskilled work."  ECF No. 16 at 19.  The ALJ ultimately determined, based on
the vocational expert's testimony, that Plaintiff could perform three representative
occupations that were classified as unskilled.  Tr. 40.

(unpublished) (affirming ALJ's reliance on his consultative examiner's

opinion in assessing the claimant's RFC).

## C.

Plaintiff argues the RFC assessment does not account for her

medical imaging and diagnoses of chronic lower back pain and lumbar

radiculopathy.  ECF No. 16 at 19-20.  Although the ALJ found that Plaintiff

had a severe impairment of degenerative disc disease with lumbar

radiculopathy, Tr. 31, 35, he noted substantial medical evidence showing

her conditions caused limitations no greater than those included in the RFC

assessment.  Tr. 35-36.

> The claimant then presented to the emergency department with the
> same complaints, but testing was unremarkable for any acute
> abnormalities.  She was diagnosed with gastroesophageal reflux
> disease (GERD) and discharged with advice to quit smoking and
> follow up with her primary care physician (Exhibit B2F).  She
> followed up at the primary care office a couple weeks later and again
> in August 2013.  On both occasions, she was referred for
> gastrointestinal consultation and an EGD (this was undertaken in
> September).  At the later appointment, she was also advised to do
> physical therapy exercises for her back pain and a history of right
> ankle fracture with continued issues of pain and swelling was noted
> (Exhibit B1F).  The EGD resulted in a finding of esophagitis in
> October 2013 (Exhibits B2F [Tr. 414-16] and B5F [Tr. 426]).
>
> ****
>
> The claimant returned to her primary care office later in October
> 2013 for medication management of her back pain and GERD.  She
> exhibited a depressed affect and lower back tenderness.  The
> following month, she reported right leg numbness and continued
> back pain.  A notation was made of a 2011 MRI of her lumbar spine

that showed "multilevel osteochondrotic changes in the lumbar spine, most pronounced at the L3-L4 level where there is severe degenerative disc disease and a small left foraminal disc extrusion narrowing the left L3 neuroforamen. A small right paracentral L4-L5 disc extrusion in combination with the bilateral moderate facet arthrosis causes mild to moderate narrowing of the right L4 neural foramen." Her dose of Gabapentin was increased and she was referred to an orthopedist. She also complained of shortness of breath and was referred for a chest x-ray and CT scan. In December 2013, she reported worsening of the right ankle pain and said she had started using a cane to ambulate due to unsteadiness. An x-ray showed trace osteoarthritis of the first MTP joint and a small bone fragment (Exhibit B4F) [Tr. 429-34].

Throughout early and mid-2014, the claimant followed up with her primary care office with continuing complaints of back and ankle pain. She was encouraged to take her medications and wear the right ankle brace. Referrals were provided to We Care and an orthopedist, but the claimant had some difficulty in obtaining this care and in affording her medications (though she also had compliance problems, as well as issues with confusion about what the medications were for and how she should take them). On physical examinations, the claimant generally showed tightness and tenderness of the lumbar spine and occasional swelling and tenderness of the right ankle (Exhibit B6F) [Tr. 491-92]. In August 2014, the claimant presented to the emergency department with a back and ankle pain exacerbation after a fall on the right side. X-rays of the lumbar spine showed diffuse facet osteoarthritis and sclerotic changes in the spinous processes. An x-ray of the right ankle confirmed the previously noted old fracture and the mild osteoarthritis of the first MTP joint. She was given pain medication and discharged the same day (Exhibit B5F) [Tr. 445-58].

The claimant's chronic pain complaints continued through the remainder of 2014 and she also complained of right wrist pain (for which she was given a splint) and depression. It was noted that she had had poor compliance with her Cymbalta prescription and she had added stress due to a death in the family. She was advised on mental health and grief resources in the community and restarted on Cymbalta with an increased dose [Tr. 476-77]. In February 2015,

it was noted on follow up that "it is unclear what medications [the claimant] is taking." Intramuscular injections of Toradol were administered to the back and right leg for acute pain and she was given updated prescriptions for her medications. Medication compliance was emphasized and she was advised (as she had been on numerous other occasions) to bring her medication bottles in to the next appointment for reconciliation [Tr. 471-73, 482]. Despite this admonition, she again forgot to bring the bottles to her March 2015 appointment; however, she reported improvement in her pain with medication and less depression with counseling. She indicated performing more household duties and having an improved mood. Continued compliance issues were noted and she was again counseled regarding her medication regimen (this recurred throughout 2015) [Tr. 469-71]. In July 2015, the claimant reported continued pain and worsening depression, but admitted to medication noncompliance and failure to follow up with the community resources that had been provided [Tr. 461]. In September 2015, she reported running out of her medications prior to her appointment and having symptom exacerbations. She was given medication refills and referred to an orthopedist for evaluation and imaging (Exhibit B6F) [Tr. 459-61].

Throughout 2014 and 2015, it was noted that the claimant was using a cane when ambulating to assist with balance, but it does not appear to have been prescribed. Nonetheless, it was noted that she did not have issues with balance or with falls while using the cane, so the undersigned has included the use of a cane in the residual functional capacity (Exhibit B6F) [*see, e.g.*, Tr. 467, 489, 491, 493].

Tr. 35-36.

Thereafter, the ALJ considered Plaintiff's hearing testimony, Tr. 36-

37, and stated, in part, Plaintiff's "statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely

consistent with the evidence for the reasons explained below." Tr. 37. The

ALJ analyzed Plaintiff's subjective complaints in light of her ability to

perform daily activities and concluded that Plaintiff "is able to perform a

fairly wide range of activities of daily living, which is not entirely consistent

with the allegations of an inability to perform work activity."[13]  *Id.*

The ALJ further determined that Plaintiff has severe impairments that

result in functional limitations, but not to such a degree that would be

debilitating or preclude work within the RFC.  Tr. 38.  The ALJ considered

Plaintiff's consistent reported complaints of pain during the relevant period

and noted that her physical examinations have shown tenderness and

tightness in the back and some tenderness and swelling in the right lower

extremity and wrist.  Tr. 38.  The ALJ noted that he considered these

factors in the RFC.  *Id.*

Plaintiff alleges the ALJ's RFC assessment does not account for her

obesity in combination with her other symptoms.  ECF No. 16 at 21-23.

The ALJ identified obesity as a severe impairment and expressly referred

to SSR 02-01p, 2002 SSR LEXIS 1 (2002) and one of Plaintiff's

---

[13]  The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).  *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).  Although the ALJ did not expressly refer to the three-part pain standard set forth in Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002), the ALJ's findings, discussion, and citation to 20 C.F.R. § 404.1529, Tr. 34, indicate that the pain standard was applied.  Wilson, 284 F.3d at 1226.

"precipitating and aggravating factors."  Tr. 31-32, 38.  In particular, the ALJ

noted Plaintiff's obesity precipitated and/or aggravated her back pain,

hypertension, and GERD and he accounted for those in his RFC

assessment.  Tr. 38.  The ALJ considered Plaintiff's obesity and no error

has been shown.  *See* Lewis v. Comm'r of Soc. Sec., 487 F. App'x 481,

483 (11th Cir. 2012) (unpublished).

D.

Plaintiff challenges the ALJ's observation that her cane was not

prescribed, alleging that a cane is a nonprescription item.  ECF No. 16 at

20.  Although it is possible to obtain a cane without a prescription, doctors

may still prescribe a cane when it is medically necessary.  Notwithstanding,

the ALJ accounted for Plaintiff's use of a cane by including it in the RFC

assessment.  Tr. 34 ("she needs to be allowed to use a mono-cane for

ambulation"); *see* Tr. 36 ("it was noted that she did not have issues with

balance or with falls while using the cane, so the undersigned has included

the use of a cane in the [RFC] (Exhibit B6F)")

E.

ALJ also considered the evaluations performed by State agency

medical consultant, Thomas Peele, M.D., Tr. 137-41, 149-52 (Jan. 9, 2014,

Reconsideration), who provided a physical RFC conclusion stating that

Plaintiff could perform light exertional work with some limitations.  Tr. 38.

He also considered the evaluations of State agency psychological

consultants, Sharon Ames-Dennard, Ph.D., Tr. 110-12, 116, 120-22, 126

(Oct. 26, 2013, Initial), and David Clay, Ph.D., Tr. 131-37, 146-48 (Dec. 31,

2013, Reconsideration), who provided separate mental RFC conclusions

stated that Plaintiff had only mild limitations in activities of daily living, social

functioning, and in concentration, persistence, and pace.  *Id.*  The ALJ

noted the general proposition that they were non-examining physicians

"and therefore their opinions do not as a general matter deserve as much

weight as that of examining or treating physicians," but "do deserve

substantial weight in a case like this in which the conclusions are largely

consistent with the evidence.[14]  Nonetheless, the [ALJ] . . . assessed a

slightly more restrictive [RFC] out of an abundance of caution in light of the

evidence received at the hearing level."  Tr. 38-39.

Substantial evidence supports the ALJ's RFC assessment.  The ALJ

properly performed his responsibility of evaluating the relevant evidence in

---

14  Although not given the same controlling weight or deference as the opinion of treating physicians, the findings of a state agency medical consultant regarding the nature and severity of a claimant's impairments must be treated as expert opinion at the ALJ and Appeals Council levels of administrative review.  *See* SSR 96-6p, 1996 SSR LEXIS 3, at *4 (July 2, 1996) (rescinded and replaced by SSR 17-2p eff. Mar. 27, 2017). The findings of State agency medical consultant may provide additional evidence to support the ALJ's findings.  *See* Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).

assessing Plaintiff's RFC.  Tr. 16-19; *see* <u>Ybarra v. Comm'r of Soc. Sec.</u>,

658 F. App'x 538, 543 (11th Cir. 2016) (unpublished).

F.

Plaintiff alleges she should have been found disabled at step 5 of the

sequential evaluation process pursuant to the application of the Grids.

ECF No. 17 at 17-18.  Substantial evidence supports the ALJ's reliance on

the vocational expert's testimony that supported the ALJ's finding that

Plaintiff could perform other jobs in the national economy.

At step 4, the ALJ found that Plaintiff could not perform her past

relevant work.  *See supra* at 5-6.  The ALJ was required to determine if

Plaintiff could perform other work at step 5.  <u>Jones v. Apfel</u>, 190 F.3d 1224,

1228 (11th Cir. 1999).  The ALJ utilized the testimony of the vocational

expert within the framework of Rules 202.10 and 202.13 of the Grids--the

rules that most closely corresponded to Plaintiff's vocational

characteristics--to conclude that a significant number of jobs exist in the

national economy that Plaintiff could perform given her RFC and other

vocational factors.  Tr. 39-40.

During the hearing, the ALJ posed a hypothetical question to the

vocational expert that included Plaintiff's age of 54 years old, that she had

no skills or semi-skills, and other factors including the need for a mono-

cane for ambulation.  Tr. 80-81.  The vocational expert believed the

hypothetical individual would not be able to return to any of the described

past relevant work as defined or as performed.  Tr. 81.  The vocational

expert, however, identified other work in three representative occupations,

*e.g.*, ticket seller, ticket taker, and house sitter, all with light exertion,

unskilled, with an SVP of 2.  Tr. 40, 81-82; *see supra* at n.4.  The

vocational expert also considered the types of breaks that would be

allowed to maintain this level of competitive employment.  Tr. 82.  The

vocational expert mentioned one caveat to reduce "ticket taker positions by

half to reflect what [he believed] would be within the limitations of the

hypothetical.[15]  Other than that everything is the same."  Tr. 82; *see* Tr. 83-

84.  The vocational expert further explained that his reduction was based

on his "personal experience and observation and market surveys and job

analysis."  Tr. 83-84.

The vocational expert's testimony was based upon the ALJ's

hypothetical question(s) that fairly set out Plaintiff's reasonable limitations.

Tr. 80-85.  The ALJ relied on the vocational expert's testimony to find that

---

15  This included the requirement of a sit and stand option and that there would
be limitations in terms of the flexibility needed to accommodate this limitation.  Tr. 84.

Plaintiff could perform other work.  *See* <u>Wilson</u>, 284 F.3d at 1227.  No error

has been shown.

## V. Conclusion

Considering the record as a whole, the ALJ's findings are based upon

substantial evidence in the record and the ALJ correctly applied the law.

Accordingly, it is respectfully recommended that the decision of the

Commissioner to deny Plaintiff's applications for Social Security benefits be

**AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on February 14, 2018.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**